UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:

ADVOCATING DISABILITY RIGHTS, INC., a
Florida not-for-profit corporation, and CARLISLE
WILSON, Individually,

**04 - 60492**

**NIGHT BOX FILED**

CIV-ZLOCH

Plaintiffs,

APR 15 2004

vs.

MAGISTRATE JUDGE
SNOW

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

WATER TAXI, INC.; FISHERIES INC., d/b/a
15TH STREET FISHERIES; BAHIA CABANA
BEACH RESORT INC., d/b/a BAHIA CABANA
BEACH RESORT; LODGING OG L.L.C. as
General partner of LOF FT. LAUDERDALE
LIMITED PARTNERSHIP d/b/a Doubletree Guest
Suites; MARRIOTT INTERNATIONAL, INC.
D/b/a Fort Lauderdale Marina Marriot; BOCA
RESORTS, INC. d/b/a PIER 66 RESORT AND
MARINA; SHIRTTAIL CHARLIES RESTAURANT
CORP.; ROSCOE, LLC, d/b/a SHOOTERS

**COMPLAINT**
**(Temporary and Permanent Injunctive Relief
Demanded)**

Defendants.

_____/

Plaintiffs, ADVOCATING DISABILITY RIGHTS, INC., a Florida not-for-profit corporation, and

CARLISLE WILSON, Individually (sometimes jointly referred to herein as "Plaintiff") sue the defendant(s),

WATER TAXI, INC.; FISHERIES INC., d/b/a 15TH STREET FISHERIES; BAHIA CABANA BEACH

RESORT INC., d/b/a BAHIA CABANA BEACH RESORT; LODGING OG L.L.C. as General partner of LOF

FT. LAUDERDALE LIMITED PARTNERSHIP d/b/a Doubletree Guest Suites; MARRIOTT

INTERNATIONAL, INC. d/b/a Fort Lauderdale Marina Marriot ; BOCA RESORTS, INC. d/b/a PIER 66

RESORT AND MARINA; SHIRTTAIL CHARLIES RESTAURANT CORP.; ROSCOE, LLC, d/b/a

**ORIGINAL
(RED INK)**



SHOOTERS, (sometimes referred to as "Defendant" or "Defendants")[1] for Injunctive Relief, Attorneys'

Fees, damages and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq,

("ADA") and/or  section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and in support state:


## JURISDICTION AND VENUE

1.     This action arises from violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §

2181, et seq, and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) as more fully set

forth herein.  This Court has original jurisdiction pursuant to 28 U.S.C. § 1343.

2.     Venue lies in this district as the property which is the subject matter of this claim is located in this

judicial district, and the Defendant is doing business in this judicial district.


## STATUTORY BACKGROUND OF THE ADA

3.     On July 26, 1990, Congress enacted the Americans with Disabilities Act of 1990, establishing

important civil rights for individuals with disabilities, including the right to full and equal enjoyment

of the goods, services, facilities, privileges, and access to places of public accommodations.

4.     Pursuant to U.S.C. § 12182 and 28 CFR § 36.201(a), no place of public accommodation shall

discriminate against an individual, on the basis of such individual's disability, with regard to the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

at that place of public accommodation.

---

[1]     Defendants, Fisheries Inc., D/b/a 15th Street Fisheries; Bahia Cabana Beach Resort Inc., D/b/a Bahia Cabana Beach Resort; Lodging Og L.l.c. as General Partner of Lof Ft. Lauderdale Limited Partnership; Marriott International, Inc.; Boca Resorts, Inc. D/b/a Pier 66 Resort and Marina; Shirttail Charlies Restaurant Corp.; Roscoe, Llc, D/b/a Shooters will sometimes be referred to as the Accessible Route Defendants.

5.     The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if the Defendant has ten (10) or fewer employees and gross receipts of $500,000.00 or less.  42 U.S.C. § 12181; 28 CFR § 36.508(a).

6.     Defendants are required to remove architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that has existed prior to January 26, 1992, 28CFR § 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally if the defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

7.     Appendix A to Part 36- Standards for Accessible Design (28CFR pt. 36, App. A) sets out guidelines for accessibility for buildings and facilities.  These guidelines are to be applied during design, construction and alteration of such buildings and facilities to the extent required by regulations issued by Federal Agencies, including the Department of Justice, under the ADA.

8.     The provisions of 49 CFR Part 37, implement the transportation and related provisions of title II and III of the Americans with Disabilities Act.

9.     The provisions of 49 CFR Part 38 provide the minimum guidelines and requirements for accessibility standards in 49 CFR Part 37 for transportation vehicles required to be accessible by the Americans with Disabilities Act.

10.    The provisions of 49 CFR Part 27, implements provisions section 504 of the Rehabilitation Act of

1973 (29 U.S.C. § 794) to the end that no otherwise qualified individual with a disability in the

United States shall, solely by reason of his or her disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving

federal assistance.

## THE PARTIES AND STANDING

**The Plaintiffs**

11.    Plaintiff, ADVOCATING DISABILITY RIGHTS, INC., is a non-profit Florida corporation.  The

members of this organization include individuals with disabilities as defined by the ADA.  This

organization's purpose is to represent its members interests by assuring that places of public

accommodation are accessible to and usable by the disabled and that its members are not

discriminated against because of their disabilities.  Plaintiff, and its members, have suffered and

will continue to suffer direct and indirect injury as a result of the Defendants' discrimination until

Defendants are compelled to comply with the requirements of the ADA.  ADVOCATING

DISABILITY RIGHTS, INC., has also been discriminated against because of its association with its

disabled members and their claims.    ADR's primary purpose is to seek enforcement and

compliance with the ADA in areas where its members live and travel since they have and/or want

to avail themselves of services and goods which are available to the public at large but have been

and are restricted to people, like Carlisle Wilson, with disabilities because of illegal barriers to

accessibility.

12.    Plaintiff, CARLISLE WILSON, is a  resident of Ft. Lauderdale in Broward County, Florida, is sui

juris and qualifies as an individual with disabilities as defined by the ADA since his movements are restricted to a wheelchair.  Plaintiff, Carlisle Wilson, is a founding member and officer of ADR.

**Defendant WATERTAXI, INC. ("WATERTAXI")**

13. Defendant WATERTAXI owns; or leases; or leases to; or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. 28 CFR §§ 36.201(a) and 36.104.  Defendant WATER TAXI is responsible for complying with the obligations of the ADA.

14. The place of public accommodation that the Defendant owns, operates, leases or leases to is the Water Bus, a fixed route system of public transportation which operates according to a fixed schedule, along a prescribed route with 20 stops in and about the waterways of Broward County, Florida.  Defendant's brochure, which sets forth its route and schedule, is attached hereto as Exhibit "A".

15. The vehicles utilized by Defendant WATERTAXI as part of the Water Bus system to transport members of the public are approximately 20 passenger vessels.

16. Some or all of the WATERTAXI boats were purchased with federal funds.

17. Some or all of the operating costs of the Water Bus fixed route transportation system are paid for with federal funds.

18. Some of the Water Bus passenger vessels are owned by defendant WATERTAXI and the remainder of the Water Bus passenger vessels are owned by Broward County through its Broward County Transit division.

19. Broward County through its Broward County Transit division holds the Water Bus service out to the

public as a part of its "Family of Services" ridership.  Specifically, Broward County's website advertises that "along with BCT's Fixed Route System which compromises 95% of our Family of Services ridership, BCT also offers: . . . Water Bus Service . . . ."

20.     The Water Bus service operated by Defendant WATERTAXI is public transportation.

21.     Defendant WATERTAXI operates the Water Bus fixed transportation system pursuant to contract with Broward County through its Broward County Transit division.


**The Accessible Route Defendants**

22.     Accessible Route Defendant FISHERIES INC. is a corporation doing business as 15TH STREET FISHERIES at 1900 S.E. 15th Street, Fort Lauderdale, Florida 33316.

23.     Accessible Route Defendant BAHIA CABANA BEACH RESORT INC. is a corporation doing business as BAHIA CABANA BEACH RESORT at 3001 Harbor Drive, Fort Lauderdale, Florida.

24.     Accessible Route Defendant LODGING OG L.L.C. as General partner of LOF FT. LAUDERDALE LIMITED PARTNERSHIP is a corporation who owns, operates or leases the property operated as the Doubletree Guest Suites located at 2670 East Sunrise Boulevard, Fort Lauderdale, Florida.

25.     Accessible Route Defendant BOCA RESORTS, INC. is a corporation doing business as PIER 66 RESORT AND MARINA at 2301 SE 17th Street Causeway, Fort Lauderdale, Florida.

26.     Accessible Route Defendant SHIRTTAIL CHARLIES RESTAURANT CORP is a corporation doing business at 400 SW 3rd Avenue, Fort Lauderdale, Florida.

27.     Accessible Route Defendant ROSCOE, LLC, is a corporation doing business as SHOOTERS at 3033 NE 32nd Avenue, Fort Lauderdale, Florida.

28.     Accessible Route Defendant MARRIOTT INTERNATIONAL, INC. is a corporation  who owns,

operates or leases the property operated as the Fort Lauderdale Marina Marriot at 1881 SE 17th Street, Fort Lauderdale, Florida.

29.  Each of the Accessible Route Defendants own; or lease; or lease to; or operate a place of public accommodation (as defined by the ADA and the regulations implementing the ADA) adjacent to a Water Bus stop.   28 CFR §§ 36.201(a) & 36.104.  Each Accessible Route Defendant is responsible for complying with the obligations of the ADA.  The address of each Accessible Route Defendant's place of public accommodation, and the closest adjacent Water Bus Stop to each are as follows:

| Defendant | Location of Place of Public Accommodation | Closest Adjacent Water Bus Stop |
|---|---|---|
| FISHERIES INC., d/b/a 15TH STREET FISHERIES | 1900 S.E. 15th Street, Fort Lauderdale, Florida 33316 | 11 |
| BAHIA CABANA BEACH RESORT INC., d/b/a BAHIA CABANA BEACH RESORT | 3001 Harbor Drive, Fort Lauderdale, Florida | 8 |
| LODGING OG L.L.C. as General partner of LOF FT. LAUDERDALE LIMITED PARTNERSHIP d/b/a Doubletree Guest Suites | 2670 East Sunrise Boulevard, Fort Lauderdale, Florida | 3 |
| MARRIOTT INTERNATIONAL, INC. D/b/a Fort Lauderdale Marina Marriot | 1881 SE 17th Street, Fort Lauderdale, Florida | 10 |
| BOCA RESORTS, INC. d/b/a PIER 66 RESORT AND MARINA | 2301 SE 17th Street Causeway, Fort Lauderdale, Florida | 9 |
| SHIRTTAIL CHARLIES RESTAURANT CORP | 400 SW 3rd Avenue, Fort Lauderdale, Florida | 19 |

| ROSCOE, LLC, d/b/a SHOOTERS | 3033 NE 32ND Avenue, Fort Lauderdale, Florida | 1 |

30.     The Accessible Route Defendants have discriminated against the individual and corporate

Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities,

privileges, advantages and or accommodations of its place of public accommodations or

commercial facility in violation of 42 U.S.C. §12181 et seq., and 28 CFR § 36.302 et seq, as

described herein.  Specifically the Accessible Route Defendants have has failed to provide at least

one accessible route within the boundary of their respective sites from the closest adjacent Water

Bus stop as required by ADAAG § 4.3, which provides, in pertinent part that: "[a]t least one

accessible route within the boundary of the site shall be provided from public transportation stops."

ADAAG § 4.3.2(1).


**The Federal Funding**

31.     On May 31, 2000, Defendant WATERTAXI, along with Broward County, The Florida department of

Transportation, submitted an application to the Federal Department of Transportation for a grant of

monies from the Ferry Boat Discretionary (FDB) Program.  (The "Application") This program,

administered by the Federal Highway Administration, provides a special funding category for the

construction of ferry boats and ferry terminal facilities, and was created by Section 1064 of the

Intermodal Surface Transportation Efficiency Act of 1991 (1991 ISTEA, Public Law 102-240).

Section 1207 of the Transportation Equity Act for the 21st Century (TEA-21, Public Law 105-178)

reauthorized the FBD funding category through FY 2003.  The application is attached hereto as

Exhibit B.

32.     Pursuant to the application, WATERTAXI committed itself to a "private/public" partnership with Broward County to operate the Water Bus system using WATERTAXI's existing facilities.  The result is an "entirely new interconnected ferry transit system" which converted WATERTAXI's existing 14 hour per day operation from a demand response, tourist system to a 22 hour per day, fixed-route, scheduled system with commuter-oriented service.

33.     Pursuant to the Application WATERTAXI, and its "private/public partnership" was to do the following:

     a.     Operate the Water Bus service from 5:40 a.m. to 11:50 p.m. seven days per week.

     b.     Commit $240,000 to purchase boats.

     c.     Construct 10 "ADA compliant" terminals and landings.

     d.     Construct 20shelters.

     e.     Put up $100,000 of signage.

     f.     Put in $1,000,000 from annual operations.

34.     The Application was granted, and the Federal funds have been, and are to be in the future, disbursed to Defendant WATERTAXI.

35.     The Water Bus Service operated by Defendant WATERTAXI: (i)  does not operate from 5:40 a.m. to 11:50 p.m. seven days per week; (ii) has not constructed 10 "ADA compliant" terminals and landings; (iii) has not constructed 20shelters; (iv) has not put up $100,000 of signage.


### COUNT I
### CLAIM FOR RELIEF AGAINST DEFENDANT WATERTAXI
### PURSUANT TO TITLE III OF THE
### AMERICANS WITH DISABILITY ACT

36.    Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this count and incorporate them by reference.

37.    This is an action against Defendant WATERTAXI for violations of Title III of the Americans With Disability Act.

38.    Defendant WATERTAXI has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodations or commercial facility in violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein.

39.    Defendant has discriminated and is discriminating against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities as described below by January 26, 1992 (or January 26, 1993 if defendant has 10 of fewer employees and gross receipts of $500,000 or less):

   a.    Parking at its Water Taxi Base does not comply with the Americans with Disabilities Act Architectural Guidelines (ADAAG) § 4.6.

   b.    Accessible routes at the Water Taxi base do not comply with ADAAG § 4.3.

   c.    Ramps at the Water Taxi base do not comply with ADAAG § 4.8.

   d.    Defendant's Water Busses / Taxis are not accessible as defined in 49 CFR Subtitle A Parts 37 & 38.

   e.    The discriminatory violations described above are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires an inspection of the Defendant's place of public accommodation (*i.e.* the Water Taxi Base, inspections of all the Water Busses / Taxis, all ) in order to determine all of the discriminatory acts violating the ADA.

33.    The correction of these violations of the ADA is readily achievable or Defendant is obligated to

have its place of public accommodation readily accessible as defined by the ADA.

34.     Plaintiff, Carlisle Wilson, became aware of the Defendant's non-compliance with the ADA when he attempted to use to Water Bus / Taxi on several occasions in 2003 and 2004. Plaintiff plans on returning to the Defendants' Properties to avail himself there of the goods and services being offered.

35.     The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit and/or use the Defendant's properties /fixed route transportation system and have endangered Plaintiff's safety and the safety of other disabled persons who also visit and/or may want to visit the properties.

36.     Based on the above, the members of ADR, and other disabled persons have a realistic, credible, existing, and continuing threat of discrimination from Defendant's non-compliance with the ADA as alleged above.

37.     Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to discrimination in violation of the ADA by Defendant.

38.     Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys' Fees including costs and expenses incurred in this action. Plaintiffs are entitled to recover these Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505.

39.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000. or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

40.     Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

41.     Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief

        including an order to alter Defendant's facility to make those facilities readily accessible to the

        Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility

        either temporary or permanently until such time as the defendant cures its violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

        a.      A temporary injunction and a permanent injunction providing for injunctive relief against the

Defendant WATERTAXI including an order to make all readily achievable alterations to the facility; or to

make such facility readily accessible to and usable by individuals with disabilities to the extent required by

the ADA.

        b.      An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

        c.      Such other relief as the Court deems just and proper.


## COUNT II
## CLAIM FOR RELIEF AGAINST DEFENDANT WATERTAXI
## PURSUANT TO REHABILITATION ACT

42.     Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this

        count and incorporate them by reference.

43.     This is an action against Defendant WATERTAXI for violations of section 504 of the Rehabilitation

        Act of 1973 (29 U.S.C. § 794).

44.     Plaintiff is disabled as that term is defined in the Act.

45.     Plaintiff was and is unable to utilize the Water Taxi services solely by reason of his handicap.

46.     Upon information and belief, Defendant receives federal financial assistance such that it is subject

to the requirements of Section 504 of the Rehabilitation Act.

47.     Defendant's failure to remove barriers was intentional and  willful, and upon information and belief, motivated by animus against disabled persons in general, including Plaintiffs.

48.     Plaintiffs have been damaged as a result of Defendant's violation of the aforementioned statute in that they have been excluded from participation in and denied the benefits provided to similarly situated non-disabled individuals, resulting in humiliation, inconvenience, and hardship. Accordingly, Plaintiffs have been excluded from full participation and denied the benefits of the services, programs, and activities of Defendant and have been subjected to intentional discrimination by Defendant.

WHEREFORE, Plaintiffs respectfully request this Court:

a.      Assume jurisdiction over this action; and

b.      Order the Defendant to remove all barriers to equal  participation by Plaintiffs to the programs, activities, and public facilities of Defendant; and

c.      Enter a judgment against Defendant for Plaintiffs' damages, costs of suit and attorney's fees as required by the law; and

d.      Retain jurisdiction over this action until Defendant has fully complied with the Orders of this Court.

## COUNT III
## CLAIM FOR SPECIFIC PERFORMANCE AS
## AGAINST DEFENDANT WATERTAXI

47.     Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this count and incorporate them by reference.

48.     This Count III is a claim for specific performance of the Ferry Boat Discretionary Program which

        was entered into by and between Defendant Watertaxi and various governmental agencies,

        including but not limited to Broward County Florida.  See Exhibit B.

49.     Plaintiff is an intended third-party beneficiary of the agreement hereto attached as Exhibit B.

50.     Compliance with the specific terms and conditions of the agreement attached hereto as Exhibit B

        is unique and within the control of Defendants and its agents.

51.     As of this date, Defendant has failed and refused to abide by the agreement's terms and

        conditions. Such material shortcomings include but are not limited to funding, hours of operation,

        scope of operation, access for disable passengers, and inadequate and dangerous infrastructure.

52.     Plaintiff has no adequate remedy at law.  As such, Plaintiff is entitled to specific performance of the

        agreement hereto attached as Exhibit B.

        WHEREFORE, Plaintiff demands Judgment against Defendant for specific performance of the

agreement attached hereto as Exhibit B.


**COUNT IV**
**CLAIM FOR RELIEF AS**
**AGAINST ACCESSIBLE ROUTE DEFENDANT FISHERIES INC. d/b/a 15TH STREET FISHERIES**
**PURSUANT TO TITLE III OF THE  AMERICANS WITH DISABILITY ACT**


53.     Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this

        count and incorporate them by reference.

54.     This is an action against Accessible Route Defendant FISHERIES INC. d/b/a 15TH STREET

        FISHERIES for violations of Title III of the Americans With Disability Act.

55.     This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodations or commercial facility in violation of 42 U.S.C. §12181 et seq., and 28 CFR § 36.302 et seq, as described herein. Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops."  ADAAG § 4.3.2(1).

56.     The correction of these violations of the ADA is readily achievable or this Accessible Route Defendant is obligated to have its place of public accommodation readily accessible as defined by the ADA.

57.     Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with the ADA when he visited its Property on several occasions in 2003 and 2004.  Plaintiff plans on returning to the Defendant's Property to avail himself there of the goods and services being offered.

58.     The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and the safety of other disabled persons who also visit and/or may want to visit the properties.

59.     Based on the above, the members of ADR, and other disabled persons have a realistic, credible, existing, and continuing threat of discrimination from this Accessible Route Defendant's non-compliance of the ADA with respect to the property at issue as alleged above.

60.     Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to

discrimination in violation of the ADA by this Accessible Route Defendant.

61.     Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys'

Fees including costs and expenses incurred in this action.  Plaintiffs are entitled to recover these

Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42

U.S.C. § 12205 and 28 CFR  § 36.505.

62.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by

January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts

of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this

Accessible Route Defendant.

63.     Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

64.     Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief

including an order to alter this Accessible Route Defendant's facility to make them readily

accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by

closing the facility either temporary or permanently until such time as the defendant cures its

violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

        a.      A temporary injunction and a permanent injunction providing for injunctive relief against

Accessible Route Defendant  FISHERIES INC. d/b/a 15TH STREET FISHERIES including an order as to

each to that Defendant provide  [a]t least one accessible route within the boundary of its site from the

closest adjacent Water Bus stop as required by ADAAG § 4.3

        b.      An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

        c.      Such other relief as the Court deems just and proper.

**COUNT V**
**CLAIM FOR RELIEF AS**
**AGAINST ACCESSIBLE ROUTE DEFENDANT BAHIA CABANA BEACH RESORT INC.  d/b/a BAHIA**
**CABANA BEACH RESORT PURSUANT TO TITLE III OF THE  AMERICANS WITH DISABILITY ACT**

65.     Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this

        count and incorporate them by reference.

66.     This is an action against Accessible Route Defendant BAHIA CABANA BEACH RESORT INC. is a

        corporation doing business as BAHIA CABANA BEACH RESORT for violations of Title III of the

        Americans With Disability Act.

67.     This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs

        by denying them access to full and equal enjoyment of the goods, services, facilities, privileges,

        advantages and or accommodations of its place of public accommodations or commercial facility in

        violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein.

        Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route

        within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG §

        4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of

        the site shall be provided from public transportation stops."  ADAAG § 4.3.2(1).

68.     The correction of these violations of the ADA is readily achievable or this Accessible Route

        Defendant is obligated to have its place of public accommodation readily accessible as defined by

        the ADA.

69.     Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with

        the ADA when he visited its Property on several occasions in 2003 and 2004.  Plaintiff plans on

        returning to the Defendant's Property to avail himself there of the goods and services being

offered.

70.     The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit
        and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and
        the safety of other disabled persons who also visit and/or may want to visit the properties.

71.     Based on the above, the members of ADR, and other disabled persons have a realistic, credible,
        existing, and continuing threat of discrimination from this Accessible Route Defendant's non-
        compliance of the ADA with respect to the property at issue as alleged above.

72.     Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to
        discrimination in violation of the ADA by this Accessible Route Defendant.

73.     Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys'
        Fees including costs and expenses incurred in this action.  Plaintiffs are entitled to recover these
        Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42
        U.S.C. § 12205 and 28 CFR  § 36.505.

74.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by
        January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts
        of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this
        Accessible Route Defendant.

75.     Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

76.     Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief
        including an order to alter this Accessible Route Defendant's facility to make them readily
        accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by
        closing the facility either temporary or permanently until such time as the defendant cures its

violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

a.      A temporary injunction and a permanent injunction providing for injunctive relief against Accessible Route Defendant  BAHIA CABANA BEACH RESORT INC. is a corporation doing business as BAHIA CABANA BEACH RESORT including an order as to each to that Defendant provide  [a]t least one accessible route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3

b.      An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

c.      Such other relief as the Court deems just and proper.

## COUNT VI
## CLAIM FOR RELIEF AS
## AGAINST ACCESSIBLE ROUTE DEFENDANT  LODGING OG L.L.C. as General partner of LOF FT. LAUDERDALE LIMITED PARTNERSHIP PURSUANT TO TITLE III OF THE  AMERICANS WITH DISABILITY ACT

77.      Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this count and incorporate them by reference.

78.      This is an action against Accessible Route Defendant  LODGING OG L.L.C. as General partner of LOF FT. LAUDERDALE LIMITED PARTNERSHIP for violations of Title III of the Americans With Disability Act.

79.      This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodations or commercial facility in violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein.

Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops." ADAAG § 4.3.2(1).

80.   The correction of these violations of the ADA is readily achievable or this Accessible Route Defendant is obligated to have its place of public accommodation readily accessible as defined by the ADA.

81.   Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with the ADA when he visited its Property on several occasions in 2003 and 2004. Plaintiff plans on returning to the Defendant's Property to avail himself there of the goods and services being offered.

82.   The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and the safety of other disabled persons who also visit and/or may want to visit the properties.

83.   Based on the above, the members of ADR, and other disabled persons have a realistic, credible, existing, and continuing threat of discrimination from this Accessible Route Defendant's non-compliance of the ADA with respect to the property at issue as alleged above.

84.   Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to discrimination in violation of the ADA by this Accessible Route Defendant.

85.   Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys' Fees including costs and expenses incurred in this action. Plaintiffs are entitled to recover these Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42

U.S.C. § 12205 and 28 CFR § 36.505.

86.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by

January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts

of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this

Accessible Route Defendant.

87.     Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

88.     Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief

including an order to alter this Accessible Route Defendant's facility to make them readily

accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by

closing the facility either temporary or permanently until such time as the defendant cures its

violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

        a.      A temporary injunction and a permanent injunction providing for injunctive relief against

Accessible Route Defendant   LODGING OG L.L.C. as General partner of LOF FT. LAUDERDALE

LIMITED PARTNERSHIP including an order as to each to that Defendant provide  [a]t least one accessible

route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3

        b.      An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

        c.      Such other relief as the Court deems just and proper.

## COUNT VII
## CLAIM FOR RELIEF AS
## AGAINST ACCESSIBLE ROUTE DEFENDANT  BOCA RESORTS, INC. d/b/a PIER 66 RESORT AND
## MARINA PURSUANT TO TITLE III OF THE  AMERICANS WITH DISABILITY ACT

89.     Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this

count and incorporate them by reference.

90.     This is an action against Accessible Route Defendant  BOCA RESORTS, INC. d/b/a PIER 66

        RESORT AND MARINA for violations of Title III of the Americans With Disability Act.

91.     This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs

        by denying them access to full and equal enjoyment of the goods, services, facilities, privileges,

        advantages and or accommodations of its place of public accommodations or commercial facility in

        violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein.

        Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route

        within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG §

        4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of

        the site shall be provided from public transportation stops."  ADAAG § 4.3.2(1).

92.     The correction of these violations of the ADA is readily achievable or this Accessible Route

        Defendant is obligated to have its place of public accommodation readily accessible as defined by

        the ADA.

93.     Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with

        the ADA when he visited its Property on several occasions in 2003 and 2004.  Plaintiff plans on

        returning to the Defendant's Property to avail himself there of the goods and services being

        offered.

94.     The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit

        and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and

        the safety of other disabled persons who also visit and/or may want to visit the properties.

95.     Based on the above, the members of ADR, and other disabled persons have a realistic, credible,

existing, and continuing threat of discrimination from this Accessible Route Defendant's non-compliance of the ADA with respect to the property at issue as alleged above.

96.     Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to discrimination in violation of the ADA by this Accessible Route Defendant.

97.     Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys' Fees including costs and expenses incurred in this action.  Plaintiffs are entitled to recover these Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505.

98.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this Accessible Route Defendant.

99.     Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

100.    Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief including an order to alter this Accessible Route Defendant's facility to make them readily accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility either temporary or permanently until such time as the defendant cures its violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

a.      A temporary injunction and a permanent injunction providing for injunctive relief against Accessible Route Defendant   BOCA RESORTS, INC. d/b/a PIER 66 RESORT AND MARINA including an order as to each to that Defendant provide  [a]t least one accessible route within the boundary of its site

from the closest adjacent Water Bus stop as required by ADAAG § 4.3

      b.     An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

      c.     Such other relief as the Court deems just and proper.

**COUNT VIII**
**CLAIM FOR RELIEF AS**
**AGAINST ACCESSIBLE ROUTE DEFENDANT  SHIRTTAIL CHARLIES RESTAURANT CORP**
**PURSUANT TO TITLE III OF THE  AMERICANS WITH DISABILITY ACT**

101.    Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this count and incorporate them by reference.

102.    This is an action against Accessible Route Defendant  SHIRTTAIL CHARLIES RESTAURANT CORP for violations of Title III of the Americans With Disability Act.

103.    This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodations or commercial facility in violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein. Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops."  ADAAG § 4.3.2(1).

104.    The correction of these violations of the ADA is readily achievable or this Accessible Route Defendant is obligated to have its place of public accommodation readily accessible as defined by the ADA.

Page 24 of  31

105.   Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with the ADA when he visited its Property on several occasions in 2003 and 2004.  Plaintiff plans on returning to the Defendant's Property to avail himself there of the goods and services being offered.

106.   The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and the safety of other disabled persons who also visit and/or may want to visit the properties.

107.   Based on the above, the members of ADR, and other disabled persons have a realistic, credible, existing, and continuing threat of discrimination from this Accessible Route Defendant's non-compliance of the ADA with respect to the property at issue as alleged above.

108.   Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to discrimination in violation of the ADA by this Accessible Route Defendant.

109.   Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys' Fees including costs and expenses incurred in this action.  Plaintiffs are entitled to recover these Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR  § 36.505.

110.   Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this Accessible Route Defendant.

111.   Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

112.   Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief

including an order to alter this Accessible Route Defendant's facility to make them readily

accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by

closing the facility either temporary or permanently until such time as the defendant cures its

violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

      a.     A temporary injunction and a permanent injunction providing for injunctive relief against

Accessible Route Defendant  SHIRTTAIL CHARLIES RESTAURANT CORP including an order as to each

to that Defendant provide  [a]t least one accessible route within the boundary of its site from the closest

adjacent Water Bus stop as required by ADAAG § 4.3

      b.     An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

      c.     Such other relief as the Court deems just and proper.

**COUNT IX**
**CLAIM FOR RELIEF AS**
**AGAINST ACCESSIBLE ROUTE DEFENDANT  ROSCOE, LLC, d/b/a SHOOTERS PURSUANT TO**
**TITLE III OF THE  AMERICANS WITH DISABILITY ACT**

113.    Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this

        count and incorporate them by reference.

114.    This is an action against Accessible Route Defendant  ROSCOE, LLC, d/b/a SHOOTERS for

        violations of Title III of the Americans With Disability Act.

115.    This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs

        by denying them access to full and equal enjoyment of the goods, services, facilities, privileges,

        advantages and or accommodations of its place of public accommodations or commercial facility in

        violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein.

Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops."  ADAAG § 4.3.2(1).

116.    The correction of these violations of the ADA is readily achievable or this Accessible Route Defendant is obligated to have its place of public accommodation readily accessible as defined by the ADA.

117.    Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with the ADA when he visited its Property on several occasions in 2003 and 2004.  Plaintiff plans on returning to the Defendant's Property to avail himself there of the goods and services being offered.

118.    The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and the safety of other disabled persons who also visit and/or may want to visit the properties.

119.    Based on the above, the members of ADR, and other disabled persons have a realistic, credible, existing, and continuing threat of discrimination from this Accessible Route Defendant's non-compliance of the ADA with respect to the property at issue as alleged above.

120.    Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to discrimination in violation of the ADA by this Accessible Route Defendant.

121.    Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys' Fees including costs and expenses incurred in this action.  Plaintiffs are entitled to recover these Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42

U.S.C. § 12205 and 28 CFR  § 36.505.

122.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by

January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts

of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this

Accessible Route Defendant.

123.     Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

124.     Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief

including an order to alter this Accessible Route Defendant's facility to make them readily

accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by

closing the facility either temporary or permanently until such time as the defendant cures its

violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

a.       A temporary injunction and a permanent injunction providing for injunctive relief against

Accessible Route Defendant  ROSCOE, LLC, d/b/a SHOOTERS including an order as to each to that

Defendant provide  [a]t least one accessible route within the boundary of its site from the closest adjacent

Water Bus stop as required by ADAAG § 4.3

b.       An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

c.       Such other relief as the Court deems just and proper.

**COUNT X
CLAIM FOR RELIEF AS
AGAINST ACCESSIBLE ROUTE DEFENDANT   MARRIOTT INTERNATIONAL, INC PURSUANT TO
TITLE III OF THE  AMERICANS WITH DISABILITY ACT**

125.   Plaintiffs reallege each and every paragraph occurring before Count I, as fully set forth in this count and incorporate them by reference.

126.   This is an action against Accessible Route Defendant   MARRIOTT INTERNATIONAL, INC for violations of Title III of the Americans With Disability Act.

127.   This Accessible Route Defendant has discriminated against the individual and corporate Plaintiffs by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodations or commercial facility in violation of 42 U.S.C. §12181 et seq., and 28 CFR  § 36.302 et seq, as described herein. Specifically THIS Accessible Route Defendant has failed to provide at least one accessible route within the boundary of its site from the closest adjacent Water Bus stop as required by ADAAG § 4.3, which provides, in pertinent part that: "[a]t least one accessible route within the boundary of the site shall be provided from public transportation stops."  ADAAG § 4.3.2(1).

128.   The correction of these violations of the ADA is readily achievable or this Accessible Route Defendant is obligated to have its place of public accommodation readily accessible as defined by the ADA.

129.   Plaintiff, Carlisle Wilson, became aware of this Accessible Route Defendants' non-compliance with the ADA when he visited its Property on several occasions in 2003 and 2004.  Plaintiff plans on returning to the Defendant's Property to avail himself there of the goods and services being offered.

130.   The barriers described herein have effectively denied and/or diminished Plaintiffs' ability to visit and/or use the Accessible Route Defendant's property and have endangered Plaintiff's safety and the safety of other disabled persons who also visit and/or may want to visit the properties.

131.    Based on the above, the members of ADR, and other disabled persons have a realistic, credible,

existing, and continuing threat of discrimination from this Accessible Route Defendant's non-

compliance of the ADA with respect to the property at issue as alleged above.

132.    Plaintiffs have reasonable grounds to believe that they are and will continue to be subjected to

discrimination in violation of the ADA by this Accessible Route Defendant.

133.    Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable Attorneys'

Fees including costs and expenses incurred in this action.  Plaintiffs are entitled to recover these

Attorney's Fees, costs and expenses from each Accessible Route Defendant pursuant to 42

U.S.C. § 12205 and 28 CFR  § 36.505.

134.    Notice to Defendant is not required as a result of the Defendant's failure to cure the violation by

January 26, 1992 (or January 26, 1993 if Defendant has 10 or fewer employees and gross receipts

of $500,000. or less).  All other conditions precedent have been met by Plaintiff or waived by this

Accessible Route Defendant.

135.    Plaintiff's are without adequate remedy at law and are suffering irreparable harm.

136.    Pursuant to 42 U.S.C § 12188, this Court is provided authority to grant Plaintiffs Injunctive Relief

including an order to alter this Accessible Route Defendant's facility to make them readily

accessible to the Plaintiff and all other persons with disabilities as defined by the ADA; or by

closing the facility either temporary or permanently until such time as the defendant cures its

violation of the ADA.

WHEREFORE, Plaintiff respectfully requests:

a.    A temporary injunction and a permanent injunction providing for injunctive relief against

Accessible Route Defendant   MARRIOTT INTERNATIONAL, INC including an order as to each to that

Defendant provide [a]t least one accessible route within the boundary of its site from the closest adjacent

Water Bus stop as required by ADAAG § 4.3

      b.     An award of Attorney's Fees, costs and litigation expense pursuant to 42 U.S.C. §12205.

      c.     Such other relief as the Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF WILLIAM D.      LAWRENCE J. MCGUINNESS, P.A.
TUCKER, P.A.                                            Suite 920
Attorneys for Plaintiff                             5040 NW 7th Street
718 Northeast Second Avenue                 Miami, FL 33126
Fort Lauderdale, FL   33304                  tel. 305.441.1399
Tel.: 954.453.4500                             fax. 305.441.9350
Fax: 954.453.4507

By:_____     By:_____
       WILLIAM D. TUCKER, ESQ.         LAWRENCE J. MCGUINNESS, ESQ.
       Fla. Bar No. 865753               Fla. Bar No. 814611

Z:\ADA\water taxi\PLEADINGS complaint.wpd

# EXHIBIT A

# WATERTAXI'S BROCHURE
(Setting forth the Water Bus Route and Schedule)






**Miami South Beach** via Water Taxi Saturdays! **Only $16**

Operated by Water Taxi

More frequent daily service!

"Best value in South Florida!"
Check out our new bio-diesel, hybrid-electric air conditioned ferries!

Go to **watertaxi.com**
call **954-467-6677**
or visit any location for schedule

...more than just a boat ride!






Gather, talk, enjoy, shop... on the Boulevard

Over 100 Unique Specialty Shops
Fine Dining, Art Galleries and more

**Las Olas BOULEVARD**

1.888.4.LAS OLAS
www.lasolasboulevard.com

**Riverside Hotel**

New Executive Tower Now Open
954.467.0671
www.riversidehotel.com

**GRILL ROOM** On Las Olas

Argentina Grill
Renaissance Fort Lauderdale Hotel
954.467.1155

**INDIGO**

Four Points Hotel Fort Lauderdale
954.463.4445

Printed in USA

---

**WATER BUS**
Operated by Water Taxi

**Low fares:**
$5.00 all day or less

**Great Service:**
7 Days a week:
9:00AM – 12:30AM

| Fares and Passes | Effective 12-1-03 |
|---|---|
| One Way Adult | $4.00 |
| One Way Senior/Disabled/Youth | 2.00 |
| All Day | 5.00 |
| 3 – Day Pass | 10.00 |
| 7 – Day Pass | 20.00 |
| 31 – Day Adult Pass | 35.00 |
| 31 – Day Senior/Disabled/Youth | 17.50 |
| Annual Pass (365 days) | 99.00 |

All Multiday Passes are good for consecutive days only.
**All Day and Multiday Passes** are good for the pass holder only. **ID** is required for all Multiday Passes.

Annual Pass holders can bring up to (4) four companions for $3.00 each all day.

**If your crew has been conversationally informative and made your trip enjoyable, there is a tip jar onboard for you to show them your appreciation.**

Go to **watertaxi.com**
call **954-467-6677**
or visit any location for schedule

...more than just a boat ride!

Improved Bus Service

**BROWARD COUNTY Transit**

BCT Rider Info 954-357-8400
Hearing-speech impaired/TTY call
954-357-8302*
*(Teletype machine required)

**BROWARD COUNTY FLORIDA**

Wheelchair Accessible
Bike Rack Equipped

This public document was promulgated at a cost of $6616.00 or 0.03308 to inform the public about the Water Bus (Water Taxi) service and Broward County Mass Transit





# EXHIBIT B

 WATERTAXI's May 31, 2000, application to the Federal Department of Transportation for a grant of monies from the Ferry Boat Discretionary (FDB) Program

## YEAR 2001
## FERRY BOAT DISCRETIONARY PROGRAM
## APPLICATION FORM

**Date:** 5/31/00                                        **FDOT District:** Four

**Grant Recipient/Sponsor Name:** Broward County Transit (BCt)

**Project Description:**
The proposed regional ferry system is a private/public joint venture to utilize the Broward
County, Palm Beach County and Miami-Dade County waterway system to promote
tourism, increase mobility and create jobs.

Broward County, Florida has more than 300 miles of waterways that are greatly
underutilized as a transportation alternative. All of the major eastern cities, including
Deerfield Beach, Pompano Beach, Ft Lauderdale, Dania Beach, Hollywood and
Hallandale are connected by these waterways with more than 430,000 persons and 90,000
jobs in close proximity to navigable waterways. By 2020, there will be over 500,000
persons in this area and over 115,000 jobs.

The project includes the purchase of 10 ferry boats, the construction of docks, the
construction of pedestrian and bicycle connections between the surface transportation
system and the ferry system and signage.

**ELIGIBILITY:**

      **Link on a public road or "the ferry facility is providing passenger service
only"**
The proposal is for passenger service only.

      **The ferry and/or ferry terminal to be constructed or improved is either
publicly owned, publicly operated, or a public authority has majority
ownership interest where it is demonstrated that the ferry operation provides
substantial public benefits.**

The boats, docking facilities and signage purchased with the funds from this
proposal will all be publicly owned by the Broward County Division of Mass
Transit. A private/public partnership will be formed to operate the service using
the existing water taxi facilities. The result will be an entirely new interconnected
ferry transit system.

      **Does not operate in international waters**
Will operate entirely within Broward County, Florida, USA

## SUBMISSION REQUIREMENTS:

**1. State -** Florida

**2. Counties –** Broward Co., Florida, Boca Raton, Florida, Miami-Dade, Florida.

**3. U.S. Congressional District No.(s):**
         **The Districts will be affected are as follows:**

                  **- FL-20**
                  **- FL-22**
                  **- FL-23**

**4. U.S. Congressional Members by District:**

         **FL-20 - Congressman Peter Deutsch**
         **FL-22 - Congressman E. Clay Shaw**
         **FL-23 - Congressman Alcee L. Hastings**

         **U.S. Senators: Bob Graham & Connie Mack.**

**5. Facility or Project Name –** Broward Transit Water Ferry Service

**6. Serivce Termini and Ports –** Service will focus on the Downtown Ft Lauderdale and Beach areas in Central Broward County and extend to the Aventura Mall in Miami-Dade County on the south and to Boca Raton in Palm Beach County on the North. Service will be provided along the banks of the New River in Ft Lauderdale and the Intracoastal Waterway in Miami-Dade, Broward and Plam Beach Counties. Docks with direct access to residential and hotel uses will be supplemented with docks and pedestrain access to transit stops on MetroBus (Metro-Dade Transit Agency), B-Transit (Broward County Transit) and PalmTran (Palm Beach County Transit). This application proposes to meet transportation demands by further diversifying the County transit system by *providing scheduled ferry transit service along the most densely populated and developed waterways*

**7. Ownership and Operation.** - The proposal is a public/private partnership. All of the boats purchased under this proposal will be publicly owned, and the terminals are publicly owned, however, the proposed fixed-route service cannot be accomplished without a cooperative effort with the existing Water Taxi Inc. service, which has many exclusive landing contracts. The existing 14 hour operation will be converted from a demand response, tourist based system to a 22 hour, fixed-route, scheduled system with commuter-oriented service.

The partnership will greatly benefit Broward citizens and tourists (#1 industry in Broward County) through a new fixed-route water-based service connected to the fixed-route bus service

8.  **Current and Future Traffic:** Included in this application is a matrix of routes, including hours of operation, connections to ferry service, ridership and locations. Service will be provided year round due to the warm climate. Operations includes peak commuter hours, route deviation as needed, traffic generators and attractions are as follows:

**Proposed Ferry Connections**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| WB | #1 | Comm Bl/Tradewinds Av | 5:40 am - 6:40 pm | 60 min | Wkdy & Sat | 263,631 | 5,273 |
| EB | #2 | Comm B/Bayview D | 6:30 am - 6:30 pm | | | | |
| WB | #3 | Oakland Pk/Bayview D | 6:50 am - 10:20 pm | 30 Min | Wkdy/Sat/Sun | 1,208,511 | 24,170 |
| EB | #4 | Oakland Pk/A1A | 6:40 am - 11:25 pm | | | | |
| WB | #6 | Sunrise B/NE 26 A | 5:40 am - 11:25 pm | 30 Min | Wkdy/Sat/Sun | 1,573,105 | 31,462 |
| EB | #7 | Sunrise B/NE 26 A | 5:45 am - 11:50 pm | | | | |
| EB | #7 | Sunrise B/NE 26 A | 6:40 am - 9:35 pm | 30 Min | Wkdy/Sat/Sun | 1,136,663 | 22,733 |
| SB | #6 & #7 | Sunrise B/NE 26 A | 6:05 am - 8:40 pm | 40 Min | Wkdy/Sat/Sun | 373,862 | 7,477 |
| NB | #6 & #7 | Sunrise B/NE 26 A | 5 55 am - 7:55 pm | | | | |
| WB | #8 | Las Olas/Birch Rd | 5:30 am - 11:00 pm | 30 Min | Wkdy/Sat/Sun | 1,158,609 | 23,132 |
| EB | #9 | Las Olas/SE 25 A | 5:55 am - 10:50 pm | | | | |
| NB | #11 | Bahia Mar | 6:20 am - 11:15 pm | 30 Min | Wkdy/Sat/Sun | 1,136,663 | 22,733 |
| SB | #11 | Bahia Mar | 6:50 am - 9:45 pm | | | | |
| WB | #17 | SE 17 S/Eisenhower | 6:55 am - 9:50 pm | 30 Min | Wkdy/Sat/Sun | 1,136,663 | 22,733 |
| EB | #20 | SE 17 S/SE 23 A | 6:15 am - 11:10 pm | | | | |
| WB | #24 | Las Olas/SE 9 A | 5:35 am - 11:15 pm | 30 Min | Wkdy/Sat/Sun | 1,158,609 | 23,132 |
| EB | #24 | Las Olas/SE 9 A | 5:50 am - 10:45 pm | | | | |
| NB | #27 | SE 3 A/Las Olas | 5:55 am - 10:45 pm | 20 Min | Wkrdy/Sat/Sun | 1,637,404 | 32,748 |
| SB | #27 | SE 3 A/Las Olas | 5:35 am - 11:05 pm | | | | |
| NB | #29 | Andrews A/Las Olas | 6:20 am - 11:10 pm | 30 Min | Wkdy/Sat/Sun | 580,025 | 11,601 |
| SB | #30 | Andrews A/SW 2 S | 6:05 am - 10:55 pm | | | | |
| NB | #29 | Andrews A/Las Olas | 7:10 am - 9:55 pm | 30 Min | Wkdy/Sat/Sun | 1,136,663 | 22,733 |
| SB | #30 | Andrews A/SW 2 S | 6:20 am - 11:10 pm | | | | |
| NB | #35 | SW 7 A/SW 2 S | 6:20 am - 7:50 pm | 30 Min | Wkdy/Sat/Sun | 985,134 | 19,703 |
| SB | #35 | SW 7 A/SW 2 S | 6:00 am - 7:30 pm | | | | |

TOTAL NEW FERRY
RIDERS
* Fiscal Year 1998

289,631

**9. Proposed Work** - The proposed ferry service will be implemented immediately upon notification of Ferry Boat Grant approval. If this application is successful in October 2000, funds should be available by January 2001. Construction would immediately begin on the landing sites and signage programs and the first boat would be purchased by March 2001. An additional boat would be ready every 30 days following until the entire system is complete by September 2001. Initial service would begin in July 2001 with 5 boats in operation.

**10, 11. Leveraging of private or other public funding** - A fixed schedule ferry service would not be viable without a public/private partnership. The proposal leverages private capital where the existing private operator has established a base ridership and support from the hotel, commercial, entertainment and tourist attraction industries. The group also owns and operates the current 10 vessel system which will be needed to meet the service demands of the proposed service. The partnership will allow for the ability to reshape the existing on-call, tourist oriented service to a fixed-schedule, commuter service.

| | | |
|---|---|---|
| **Discretionary Request:** | $1,648,000 | 8 Boats |
| | $ 400,000 | 10 Terminals & Landings (ADA compliant) |
| | $2,048,000 | |
| **Local Match:** | $ 412,000 | 2 Boats, Water Taxi, Inc. (Cash Match to purchase boats) |
| **In-Kind:** | $ 140,000 | 20 Shelters |
| | $ 100,000 | Signage |
| | $ 240,000 | Broward County Transit |
| | $1,000,000 | Annual Operations, Water Taxi, Inc. |
| | $1,412,000 | |

The partnership will greatly benefit the citizen's of Broward County and tourists by providing a efficiently linked water based transit system to the local fixed route bus system and pedestrian network.

**12. Previous FBD Funding** - South Florida has never previously received any ferry boat monies.

**13. Future Funding Needs** – All future funding will be met through local sources. Future funding needs will include annual operating costs which will be provided by the operator and new docks and access facilities which will be met by local government or through joint development with Broward County Transit.

**14. Project Purpose and Benefit** - The partnership will greatly benefit the citizen's of Broward County and tourists by providing an efficiently linked water based transit system to the local fixed route bus system and pedestrian network. The County's canals or "wet streets" are virtually the last untapped transportation corridors in the County. Development has run up against the Everglades Conservation Area to the west and the

only way to maintain a vital economy is through redevelopment of the eastern cities and and maximizing transportation resources. Other impacts of this proposal include:

**a. Additional Jobs:**

Broward County has been very successful in implementing their Welfare And Gain Economic Self-sufficiency (WAGES) program. **In the past two years the welfare rolls have been reduced by 67%, however, the most difficult work lies ahead.**

Broward County Transit has been a leader in providing transportation assistance and these efforts will be extended to this project. The proposed ferry system will provide **54 immediate new jobs. Hiring will focus on the remaining WAGES clients and the Governor's Front Porch Neighborhoods in Opa Locka, Miami-Dade and in Northwest Ft. Lauderdale, Broward County.**

Employment Breakdown:

| | | |
|---|---|---|
| 22 Captains | (1 Captain/boat, 2 shifts/day, 7 days) | $18.00/Hour |
| 22 Mates | (1 mate per boat, 2 shifts per day, 7 days) | $10.00/Hour |
| 5 Mechanics/ Dock Maint. | (2 Mechanics on duty at all times, 7 days) | $12.00/Hour |
| 5 Dispatchers | (2 dispatchers peak periods, 1 off peak) | $ 8.00/Hour |

The project will also provide for access to hotel, restaurant and office jobs throughout the 3 County area. WAGES clients will be offered 3 months of free transportation on the entire BCt system.

The project will also have a significant impact on the economic prosperity of the area. Ft. Lauderdale is know as the Venice of America and promotion, marketing and visibility of waterborne transportation will benefit the tourist economic base.

**b. Annual increment in facility revenue:**

Anticipated additional revenue is **$142,900.**

This is a conservative estimate based on the analysis of new riders due to the ferry boat connections. The analysis indicates 35 major connections to the BCt system. Based on 1998 annual ridership on the accessed routes it was assumed a 2% increase in ridership would occur due to the proposed project. The results indicate annual ferry ridership of 269,631 person trips. Based on the 1998 average fare of $0.53, new revenue is at least $142,900 per year.

c. **Annual increment in tax revenue:**

Increased tax revenues will equal **$338,700.**

This is a conservative estimate based on the following assumptions

269,631 new riders * new entertainment trips (10%) * $50.00 * 6% sales tax = $ 80,889
269,631 new riders * new retail trips (10%) * $100.00 *6% sales tax =          $161,778
20 new jobs for WAGES recipients * $400.00 assistance * 12 months =          $ 96,000
Total New Tax Revenue:                                                        $338,667


d. **Expected Travel Time Savings:**

Travel time savings will be realized because of this project, however, determination of time saved is difficult to determine because this is a regional project. The ferry system will remove traffic from the heavily congested downtown Ft Lauderdale area and from State Road (SR) 5/US 1 and SR A1A thereby reducing congestion and travel time. The system will also provide employees direct access to waterfront jobs.


e. **Expected Annual Decrease in Transportation Costs:**

Expected annual decrease in transportation costs: $ 78,200(partial)

Decrease in transportation costs cannot be projected with any confidence due to the inability to assess time savings. However one element can be projected based on some conservative assumptions.

269,631 New trips * Entertainment/Retail Trips (20%) * Avg. of 5 miles * $0.29 per mile = $78,200


f. **Other Benefits:**

This project will be an **excellent example of intergovernmental coordination and public/private coordination.** The lead agencies include the Broward County Division of Mass Transit, the Broward County Metropolitan Planning Organization, the District 4 Office of Florida Department of Transportation and Water Taxi, Inc. This application was prepared as a joint effort and is supported by all involved.

The proposal is a public/private partnership where the existing private operator has established a base ridership and support from the hotel, commercial, entertainment and tourist attraction industries. The group also owns and operates a current 14 vessel system which will be needed to meet the service demands of the proposed service. The

partnership will allow for the ability to reshape the existing on-call, tourist oriented service to a fixed-schedule, commuter service.

**15. Project Area Map.**



JS 44   (Rev. 4/97)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO)

**I.(a) PLAINTIFFS**
CIV-ZLOCH

Advocating Disability Rights, Inc, a Florida
not-for-profit corp. and Carlisle Wilson, Individually

**DEFENDANTS**   WATER TAXI, INC; FISHERIES INC. d/b/a 15th Street Fisheries; BAHIA CABANA BEACH RESORT, INC. d/b/a BAHIA CABANA BEACH RESORT; LODGING OG LLC as General Partner of LOF FT. LAUDERDALE LIMITED PARTNERSHIP; MARRIOT INTL, INC.; BOCA RESORTS, INC. d/b/a PIER 66 RESORT AND MARINA; SHIRTTAIL CHARLIES RESTAURANT CORP; ROSCOE LLC d/b/a SHOOTERS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

MAGISTRATE JUDGE
SNOW

Broward   **04 - 60492**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.   Broward

**NIGHT BOX FILED**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William Tucker, 718 NE 2nd Ave., Ft. laud., FL 33304.
954.453.4500; and Lawrence J. McGuinness, 5040 NW 7th St., Ste.
920, Miami, FL 33126. 305.441.1399

ATTORNEYS (IF KNOWN)

APR 15 2004
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN**   (PLACE AN "✔" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT**   (PLACE AN "✔" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (US Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)   42 USC sec 12181, et seq. and 29 USC sec 794.

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   ☐ CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY**

4/14/04
DATE

SIGNATURE OF ATTORNEY OF RECORD